[Civ. No. 19309.   Second Dist., Div. One.   May 4, 1953.]

FINLAY J. MacDONALD, as Executor, etc., Appellant, v. CECIL M. JACKSON et al., Respondents.

Harry J. Miller for Appellant.

Elbert E. Hensley and Allan M. Carson for Respondents.

WHITE, P. J.—This is an appeal from a judgment of nonsuit in an action brought by the executor of the will of Elizabeth H. Ussher, deceased, and tried before the court without a jury.

By the first cause of action it is alleged, upon information and belief, that the defendants executed and delivered to

the decedent a promissory note for $5,000 dated August 20, 1945, and due three years from date. The second cause of action was upon a note for $7,880, dated October 7, 1947, and due three years from date. By the third cause of action recovery of $10,000 was sought under an agreement whereby the decedent was to receive 10 per cent of the net income of Tru-Craft Models, it being asserted that no permit for the issuance of such document had been granted by the Commissioner of Corporations and that the same was therefore void.

Each of the three causes of action also contained the following allegation:

"That at all times herein mentioned, plaintiff's testate was a devout Christian woman, devoted to doing good and helping others, and imposed great trust and confidence in defendants; that at all such times, defendants represented themselves to be of similar character and doing others good; that defendant Cecil M. Jackson at all such times represented himself to be a Reverend Minister, and thereby gained the trust and confidence of plaintiff's testate and at all times herein mentioned and for more than ten years prior to the filing of this action, there existed a highly confidential relationship between plaintiff's testate and defendants."

Defendants' answer consisted of denials, including a denial of the existence of a confidential relation. As affirmative defenses it was alleged that on or about April 14, 1950, the decedent executed a release and discharge of all obligations, including the obligation to repay the $10,000 referred to in the third cause of action. Further it was alleged that the testatrix and defendants had entered into a joint venture. And, with respect to the third cause of action, defendants invoked the bar of the statute of limitations (Code Civ. Proc., § 339, subd. 1).

The rule upon an appeal from a nonsuit is well stated in *Golceff* v. *Sugarman*, 36 Cal.2d 152, 153 [222 P.2d 665], as follows:

"And as to our duty, 'The uniform rule which an appellate court should follow in disposing of an appeal from a judgment of nonsuit is, that the court must view the evidence in the light most favorable to appellant, must disregard all inconsistencies and draw only those inferences from the evidence which can reasonably be drawn which are favorable to appellant.'" In *Seaford* v. *Smith*, 86 Cal.App.2d 339 [194 P.2d 792], it is stated: "The rule with respect to a motion for nonsuit at the close of plaintiffs' case gives to them

the benefit of full credit for all favorable evidence, together with the reasonable inferences to be drawn therefrom. Upon such motion the court may not weigh the evidence nor discredit the witnesses. If the evidence of a witness is conflicting, his statements most favorable to the plaintiff must be accepted as true."

Turning to an examination of the evidence, we find the following undisputed facts: The decedent, Miss Ussher, died on June 19, 1950, at the age of 72 years, and for some time prior to her death was ill with cancer and generalized arteriosclerosis. Her executor, the appellant herein, found in her safe deposit box a promissory note for $12,880. It appears that this note had been given to the testatrix in lieu of the note for $7,880. Whether it had also been given in lieu of the $5,000 note sued upon in the second cause of action was a matter of dispute. The defendants contended that there had never been a $5,000 note, but that the difference of $5,000 represented a $2,000 note surrendered by the testatrix and a "gift" by them to the testatrix of $3,000. The defendants produced at the trial the note for $7,880 and a note for $2,000. The note for $12,880 bore an indorsement by the testatrix as follows: "In the event of my death, this note is cancelled. Elizabeth Ussher." Below this indorsement was a second indorsement in the writing of the testatrix, as follows: "I hereby revoke above provision which was signed by me under duress, April 24, 1950."

Appellant's first ground for reversal is that there existed a confidential relationship between defendants and decedent; that the defendants gained an unfair advantage over decedent while she was without independent advice and was infirm and sick; and that consequently there arose a presumption of undue influence and fraud.

The defendants were missionaries and Miss Ussher was interested in their missionary work. Defendant Cecil Jackson, called as a witness under the provisions of section 2055, Code of Civil Procedure, testified that he met Miss Ussher in 1940 and saw her on frequent occasions thereafter except during periods when he was absent in the Orient. He testified that the note for $12,880, dated in 1947, "was executed in 1950 to make a package note at her request of the *two* thousand and the seven eight eighty notes, which represented all the funds that she had previously given me; and this was executed April 14th, 1950, at her request, stating that because of opposition by her brothers to helping the missionary work, she

would like to have this for the record and because of what she had done in the missionary field, Mrs. Jackson and I had made this $3,000 contribution, which makes up the total amount of the note.''

Further defendant Reverend Cecil Jackson testified: ''On March 11th, 1950, Miss Ussher called me by phone. She said that, 'My brothers are sending me to the hospital today.' She said, 'I have the two notes with me and I am taking them to the hospital in order to protect you from my brothers making any claim, and I want you to come to the hospital and get these notes.' '' That on March 12, 1950, the witness visited decedent at the hospital and she had on her person the note for $7,880 and a note for $2,000, both of which she gave to the witness, stating, ''Now these represent all the money that I have given you. My brothers have opposed our mutual missionary interest for a long time. I want to give these notes back to you that you may have them, so in case something should happen to me there would be no trouble.''

With respect to the execution of the $12,880 note Reverend Cecil Jackson testified: ''After Miss Ussher had returned from the hospital April 13th, 1950, she called me on the phone and said that her brothers, Charlie and Clarence, were giving her considerable opposition regarding what she had done for the missionary work, and she thought it would be well that we leave some record so that there couldn't be any complaint on that score. . . . She said, 'I think we had better, for the record's sake, make a note to cover the seven eight eighty and the two thousand and date it back to 1946; make one package of it so that we have all these transactions in one package.' During this conversation we (the two defendants Jackson) told her that we appreciated what she had done, and not knowing her true financial circumstances, Mrs. Jackson and I made her a gift of $3,000.00 in the way of adding that amount to the seven eight eighty and the two thousand, and that is what comprises this note of $12,880.''

In answer to questions propounded to him under section 2055 of the Code of Civil Procedure, Reverend Jackson testified, when asked, ''What was the relationship between you with reference to confidence or mutual trust in each other?'' replied, ''We were co-Christian workers . . . We had a friendly relationship . . . I met her in 1940, and it gradually grew into a friendly relationship. . . . Q. (By the Court) Did you have confidence in each other? Did you trust each other? A. Yes, your Honor.''

Further testifying under section 2055 of the Code of Civil Procedure, Reverend Jackson stated that he had been operating the toy shop, in which the decedent had an interest as set forth in the third cause of action, for about eight years; that the decedent took an active part in the management of the business up until the year 1949; that her activities, however, were confined to the factory where girls worked on painting and sewing; that she did not work in the retail shop at the Farmers' Market.

Defendant Reverend Jackson testified further that from 1940 until her death, the decedent advanced money "in the way of donations to help out in the mission work or in any way that was needed at the time." He further testified: "Q. It is your testimony that prior to the execution of these promissory notes in 1946 that all the advances that she made to you were in the form of gifts? Is that true or not true? A. They were given to me as contributions and gifts, and I gave her in return these notes."

With respect to evidence consisting of two deeds to property from decedent to the Jacksons in 1945, defendant Cecil Jackson testified: "The two properties were given to me to be used to carry out our missionary work together and to find a place where we could manufacture these miniatures. I had already been manufacturing them, and we needed a place. . . . These two properties were traded in on another property which was used in the manufacture of our models."

Evidence was produced as to third piece of property deeded to the "Far East Missionary Society" in 1946.

Other evidence presented as purporting to show a "confidential relationship" was a letter written by defendant Cecil M. Jackson in 1940, requesting a loan of $5,000 from decedent and indicating that there had been previous transactions. The testimony was that the letter was not answered and no loan obtained.

Under examination by defense counsel, defendant Cecil Jackson testified to a situation wherein it appears that decedent had destroyed the agreement providing for her interest in the toy shop "inadvertently." From the letter written by the decedent reporting the inadvertent destruction of said agreement no particular inference can be drawn. Jackson testified that decedent told him that she had not burned the agreement, but that one of her brothers, she felt, had taken it from her. Reverend Jackson further testified that the operation of the toy shop was a "phase" or "part" of "our missionary work."

It appeared from his testimony that he and his wife conducted a mission in Singapore under the name of "The Far East Missionary Society" and in recognition of the contributions of Miss Ussher, a plaque in bronze was erected in her honor in the church at Singapore.

It further appeared that in February, 1947, Reverend Jackson and his wife paid the decedent $997.50, "re True-Craft Investment." Reverend Jackson testified that this was not a dividend, and that reference to "investment" was, in mission work, reference to any donations or contributions in missionary work. In connection with this agreement, Reverend Jackson testified that the decedent desired to cancel it by putting an indorsement on the carbon copy held by Jackson. He further testified, with reference to the two parcels of property obtained from Miss Ussher, that these two parcels were traded for another parcel on which to operate the toy factory, and that subsequently the latter parcel was sold for $14,000 and $10,000 of the proceeds paid to Miss Ussher.

Finlay J. MacDonald, Executor of the decedent's will, testified that he had seen the alleged note for $5,000 in January, 1950, prior to decedent's death, which occurred June 19, 1950. He testified that he was called to her home after she returned from the hospital and she told him that Mr. Jackson had obtained from her the two notes for $7,880 and $5,000. At a subsequent conversation decedent told the witness that she accepted the $12,880 note against her will and had subsequently written the second endorsement stating that the first endorsement, that the note should be cancelled in event of her death, had been procured by duress. He testified in the existence of the alleged $5,000 note prior to the death of decedent. He testified that his failure to list either of the notes sued upon in the inventory of decedent's estate was upon the advice of the inheritance tax appraiser.

Reverend J. William Bostrom testified for the plaintiff that the only note he "saw" was that for $12,880 but that he had "heard" about other notes; that the decedent told him about them; that decedent told him she was "compelled" to put the indorsement on the $12,880 note providing for its cancellation in event of her death before Reverend Jackson would give it to her, and that at the witness' suggestion, she used the word "duress" when she wrote on the back of the note that she revoked the previous indorsement that it should be cancelled in event of her death.

Bearing in mind that in determining whether the evidence produced by plaintiff entitles him to have the case proceed to trial and decision on the merits we must be guided by the rules hereinbefore set forth concerning the propriety of granting a nonsuit, we are persuaded that the judgment of nonsuit in the instant case was not erroneous. This we say because we are convinced that there is in this record no evidence of sufficient substantiality to support a judgment for plaintiff if such judgment were given.

As was said by the trial judge in his summation when ruling on the motion for nonsuit, "Now the pleadings that are before me now do not mention a $12,880 note, the only one that the decedent had in her possession when she died, but does describe a $7,880.00 note and a $5,000.00 note, and produces through the defendant himself in open court the $7,880.00 note and a $2,000.00 note, and a statement that at the same time he gave her a $3,000.00 present, a gift. . . . I will have to dismiss the first cause of action. There is no proof whatever here to support a judgment for $5,000.00 with interest upon an alleged promissory note which is not here produced and the loss or destruction or whereabouts of which are not satisfactorily shown at all.

"I will have to grant the motion on the second cause of action because the plaintiff failed to produce from the possession of the Estate the note in question. It was surrendered some time before the death of the decedent to the defendants, and the only evidence that I have here that would construe most favorably for the plaintiff is that the $7,880.00 note was handed back to the defendant, discharged, paid, by the delivery and acceptance of a new $12,880.00 note, which also included something else."

As to the third cause of action, the only evidence with reference to the instrument giving decedent an interest in the toy business was that of respondent Reverend Cecil Jackson, and from his testimony the only reasonable inference to be drawn was that he, his wife and the decedent were joint venturers in the project and that the decedent actually participated in the business. No evidence was offered to show that any interest in the business was offered to the public or that the instrument in question was a security. Where a person invests money and contracts in connection therewith to render personal services and to receive a profit from his own services or other active participation in the business venture, such a contract and investment, under the authority

of *People* v. *Syde,* 37 Cal.2d 765, 768 [235 P.2d 601], and *People* v. *Gould,* 37 Cal.2d 885 [235 P.2d 604], cannot be considered a security.

■ The evidence that there existed a "confidential relationship" showed only that the decedent and the defendants were friends and were jointly interested in missionary work. Aside from the inuendoes contained in appellant's brief, there is no evidence that respondents were not bona fide missionaries or that the interest of decedent, Miss Ussher, in their work was not that of a "co-Christian worker," as she was described in the testimony.

■ The rules applicable to motions for nonsuit do not require courts to put themselves in incongruous positions in order to hold a case in court. The courts will not give a strained or unnatural construction to language or conduct, or distort the orderly laws of sequence or the logic of a given situation to force an unnatural result. Looking at the case as presented, and giving effect to the evidence which in reason it should receive, we are in accord with the conclusion reached by the trial court. The evidence, as a matter of law, is insufficient to support a judgment for appellants.

The judgment appealed from is affirmed.

Doran, J., concurred.

A petition for a rehearing was denied May 25, 1953, and appellant's petition for a hearing by the Supreme Court was denied July 2, 1953. Carter, J., was of the opinion that the petition should be granted.