[Civ. No. 19879.   Second Dist., Div. Three.   July 21, 1954.]

PETER A. LARRAMENDY et al., Respondents, v. JOSEPH N. MYRES et al., Defendants; PERCY ABBOTT et al., Appellants.

Jack Schnider and Robert J. Sullivan for Appellants.

James C. Hollingsworth and Hammons, Willard & Todd for Respondents.

WOOD (Parker), J.—Action for damages resulting from burns received by the minor plaintiff when a smoke-producing device, used by her in a dancing act, set fire to her dress. In a trial without a jury, plaintiffs obtained judgment against defendants Abbott and Bordner, individually, and against defendants Abbott and Bordner doing business as Abbott's Magic Novelty Company. Those defendants appeal from the judgment.

Upon motion of plaintiffs the action was dismissed as to defendants Myres, Groves, and high school district. Motions for nonsuits were granted as to defendants Francine Lanteri, Jolene Lanteri Jenkins, and George Boston.

Defendants Francine Lanteri and Jolene Lanteri Jenkins, known as the Lanteri sisters, conducted a dancing school in Ventura. Deanna Larramendy, plaintiff herein, 12 years of age, was a pupil in that school who had been taken ballet and toe dancing lessons about two years. On April 15, 1950, the Lanteri sisters staged a dancing exhibition in the auditorium of the Ventura Junior College wherein several pupils of the dancing school participated. Deanna was chosen for the leading role—to play the part of Persephone in a ballet, based on the myth of the seasons, known as "The Underground Queen." It was a part of her role, while dancing, to step on or trip a smoke-making device and thereby cause a puff or cloud of smoke to arise from the floor. Then, out of the smoke or "illusion," Pluto would arrive on the stage.

Francine Lanteri read, in a catalogue or trade magazine "for stage props," an advertisement regarding a smoke-making device known as "Abbott's Pufferoo." She wrote to Abbott's Magic Novelty Company, located on Sunset Boule-

vard in Los Angeles, and ordered the smoke-making device sent to her by mail C.O.D. Thereafter she received the device by mail C.O.D. Defendants Abbott and Bordner operated Abbott's Magic Novelty Company located at 6505 Sunset Boulevard in Los Angeles. In October, 1949, an advertisement bearing the title "Abbott's Pufferoo" was placed in a magazine, known as "Genii," by Abbott's Magic Novelty Company, Colon, Michigan.

The device was received in evidence, but it has not been forwarded to this court. It has not been described in any of the briefs or in the reporter's transcript. It seems from statements made by witnesses in explaining how the device was operated (and from written directions which were with the device) that the device consisted of: a receptacle into which explosive powder was poured; a $4\frac{1}{2}$ volt battery; a filament wire which extended horizontally through the middle of the powder receptacle and was connected with one end of the battery and a metal piece above a contact post; and another wire which was connected with the other end of the battery and with the contact post. In the package in which the device was received, there was a bottle of explosive powder and also a piece of paper containing directions for operating the device. The writing which was on that paper is set forth below.[1] After

---

[1]"ABBOTT'S IMPROVED PUFFEROO

Abbott's<br>Colon, Mich.

"First connect loose wire from battery to contact post. Half Fill the hole with the powder supplied. Hold away from face while doing this as you may accidently press contact.

"Place on floor and press down on metal piece with foot to make contact to light element wire. The puff will take place a few seconds later. Be sure to stand back when making contact so that puff will not strike face.

"In this improved model we send you extra element wire for replacement. This should be done after every six workings. To do this, unscrew nuts from posts near hole. Cut off about two inches of wire, twist ends around each post and refasten nuts. Then with finger gently push down middle part of wire into hole.

Battery replacements ........................$1.00
Powder replacements .............. .25 per bottle or
3.00 per pound

ABBOTT'S MAGIC NOVELTY CO.
Colon, Michigan
Phone Hollywood 5679

ABBOTT'S
MAGIC NOVELTY COMPANY
6505 Sunset Boulevard

GEO. L. BOSTON                    HOLLYWOOD,
Manager                          CALIFORNIA.''

the receptacle was half filled with powder—to the place where the powder touched the filament wire, and after the device was placed on the floor, the device was operated by stepping on the metal piece (above the contact post) which contact lighted the filament wire which ignited the powder. There was evidence that the device would not work if the receptacle was more than one-half filled with powder and the powder covered the filament wire. (It was stated that if the powder covered the wire, the wire would not ignite the powder because the powder would absorb the heat.)

Prior to the production of the play, there were three rehearsals in which the smoke device was used. On one of those occasions the device did not work when Deanna stepped on it. On the two occasions when it worked, Deanna did not see any flame coming from it. Francine Lanteri did not see any flame come from the device when it was used at rehearsals. During rehearsals Deanna wore shorts or tights. During the play she wore a ballet costume which was a flimsy dress with a full skirt made of six or seven layers of tarlatan or tulle. The bottom hem of the skirt was about 9 inches from the floor, and the diameter of the skirt at the bottom hem was about 3 feet.

The device was placed on the stage for use by Deanna. During the play when she stepped on the metal contact piece there was a puff of smoke, and a flame from the device set fire to her dress and she was severely burned.

The court found, in part, as follows: The device was manufactured, sold, and supplied by defendants Abbott, Bordner, and Abbott and Bordner doing business as Abbot's Magic Novelty Company. The device was designed, manufactured, sold, and supplied for the purpose of emitting a puff of smoke and creating an illusion in the staging of performances such as said ballet performance. The devise was imminently, inherently, and manifestly dangerous in that in addition to producing a puff of smoke it produced a large flash of flame when operated according to the instructions furnished by said defendants, and when so operated it was likely to cause dress material such as that worn by Deanna to become ignited, all of which was known or should have been known by said defendants. At said performance Deanna stepped on the device in accordance with directions accompanying the device, and as a proximate result thereof a flash of flame was emitted which ignited the dress and caused it to burst into flame and severely burn Deanna. The device was dangerous for its

intended use, namely, that of creating an illusion, and said danger was known or should have been known to said defendants. The device was used pursuant to directions which accompanied the device. Said defendants neglected to reasonably warn and inform Deanna of the dangerous propensities of said device. The only warning and information given to Deanna was that set forth in said directions, and said warning and information advised her only as to the danger from smoke and not as to the danger of fire. Deanna was not contributorily negligent. There was no intervening causation or negligence of a third person that would relieve said defendants from liability.

Appellants contend that they owed no legal duty to plaintiffs and that consequently there was no liability on the part of appellants. They argue that there was no evidence of any personal relationship between them and plaintiffs; that the device was purchased by the Lanteri sisters, and that the purchase involved no oral representations and was based on an advertisement. ██ "The courts of this state are committed to the doctrine that the duty of care exists in the absence of privity of contract not only where the article manufactured is inherently dangerous but also where it is reasonably certain, if negligently manufactured or constructed, to place life and limb in peril." (*Sheward* v. *Virtue*, 20 Cal.2d 410, 412 [126 P.2d 345].) "It is universally recognized that a manufacturer or seller of an article which is inherently and imminently dangerous to human life or health, or which, although not dangerous in itself, becomes so when applied to its intended use in the usual and customary manner, is liable to any person, whether the purchaser or a third person, who, without fault on his part, sustains an injury which is the natural and proximate result of negligence in the manufacture or sale of the article, if the injury might have been reasonably anticipated. Liability does not rest on the ground of warranty; nor does liability depend on privity of contracts, but rather on a breach of a public duty owing to all persons into whose hands the article may lawfully come, and by whom it may be used, and whose lives may, be endangered thereby, to exercise care and caution commensurate with the peril and not to expose human life to danger by carelessness or negligence." (65 C.J.S., pp. 621, 622, 623, § 100.) ██ In Restatement, Torts, page 1039, section 388, it is said: "One who supplies directly or through a third person a chattel for another to use, is subject to liability to those

whom the supplier should expect to use the chattel with the consent of the other or to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier (a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied; (b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so.''

■ The court found, as above stated, that the device was inherently dangerous. That finding was supported by the evidence. The device, which was operated by igniting powder with a lighted electric wire, caused a fire-producing explosion. The court also found, upon sufficient evidence, that defendants neglected to reasonably warn of the dangerous propensities of said device. The written directions, which were with the device when it was received, warned: to hold the device away from the face while filling the hole with powder; and to stand back when making contact (when the device is on the floor) so that ''puff'' will not strike face. There was no warning of danger from fire. There was liability on the part of appellants.

■ Appellants contend further that the court erred (1) in receiving testimony regarding certain tests of the device which the chief of the fire department of Ventura made prior to the trial and (2) in permitting a demonstration of the operation of the device to be made in the courtroom during the trial. The chief, called as a witness by plaintiffs, testified that prior to the trial he operated the device numerous times by following said directions (which were received with the device), except that he did not use the powder which came with the device; that in those tests he held material, similar to the material of Deanna's dress, 8 or 10 inches above the device and in each test the fire that was produced was at least 8 inches high and it would ignite anything of a tarlatan-type nature; that a chemist made an analysis of the powder (which came with the device) and he (witness) used powder of the same quality in making the tests. In the courtroom while he was a witness, he operated the device by following said directions and using powder that came with the device. In that test he held tarlatan, which was a part of Deanna's dress, about 10 inches above the device, and the fire that came from

the device hit the tarlatan and caused it to smolder or glow but it did not blaze. Appellants argue that the evidence regarding the tests should not have been received because the tests were not made under conditions that were substantially the same as the conditions under which the accident occurred. As to the tests made prior to the trial, there was no competent evidence that the powder used was the same quality as the powder which was received with the device, and the evidence regarding those tests should not have been received. As to the demonstration in the courtroom of the operation of the device, appellants argue that there was no evidence that the draft conditions there were the same as the draft conditions on the stage at the school when the accident occurred. The reception or rejection of evidence, belonging to the class of evidence designated as experiments, "lies largely within the discretion of the trial court, with this limitation—that it must be shown that substantially the same conditions existed [at the time of the experiment as existed at the time of the original occurrence], and further that the evidence shall be of such a character as to aid rather than to confuse the minds of the jurors with collateral matters." (*People* v. *Ely*, 203 Cal. 628, 632-633 [265 P. 818].) The trial court did not err in permitting a demonstration of the operation of the device to be made in the courtroom.

■ Appellants also contend that the amount of damages awarded was excessive. The judgment was for $52,528.24, being $7,528.24 for special damages, and $45,000 for general damages. The minor plaintiff received first, second, and third degree burns which covered more than 40 per cent of her body. She was in hospitals about seven and one-half months, and in bed at home several months. There were several skin-grafting operations and during those operations she was under a general anesthetic. There were many blood transfusions. Many scars are on her body. The bills for hospital and medical services amounted to $7,028.24, and there was evidence that bills for further treatments would amount to $500. This contention is not sustainable.

The judgment is affirmed. The appeal from the order denying the motion to enter a different judgment is dismissed.

Shinn, P. J., and Vallée, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 8, 1954.