[Civ. No. 18422. First Dist., Div. Two. Sept. 20, 1960.]

WILLIAM R. REYNOLDS, Plaintiff and Appellant, v. NATURAL GAS EQUIPMENT, INC. (a Corporation) et al., Respondents; INDUSTRIAL INDEMNITY COMPANY (a Corporation), Intervener and Appellant.

726

C. Ray Robinson, Charles E. Goff and William B. Boone for Plaintiff and Appellant.

Connolly & Farbstein for Intervener and Appellant.

Ropers, Majeski & Kane and Barfield and Barfield for Respondents.

GOOD, J. pro tem.*—Plaintiff and plaintiff in intervention appeal from a judgment of nonsuit in an action for personal injuries sustained at plaintiff's place of employment when an explosion occurred in the immediate area of a gas burner that had been manufactured by defendant Anthony Company and sold and installed by defendant Natural Gas Equipment, Inc. The two companies will be referred to as Anthony and Natural Gas. Plaintiff was employed as a fireman by Marks Materials Company, which was engaged in the production and sale of a black-top mix used in road paving. The burner was used in connection with a rotary drier to dry sand and gravels used in the mix. With the exception of the occasional intervention of the plant foreman, plaintiff was the only person who operated the burner or drier. Until four or five weeks before the explosion, the drying had been done with an oil burning unit. After installation of the gas unit, the burner involved produced the required silver blue flame and appears to have operated satisfactorily except that the quantity of aggregates dried had to be reduced somewhat. On the day of the accident, the burner was shut off at noon and relit about one-half hour later. It had been "working fine" during the morning. Shortly after relighting it, plaintiff noticed that the thermometer indicated a drop in the temperature of the drier. He checked the gas and air valves and gauges for proper pressures and on checking inside the drier noticed that instead of being blue, the flame was a reddish-orange color. Within minutes there was

---

*Assigned by Chairman of Judicial Council.

an explosion enveloping plaintiff in flame 10 to 12 feet high and 20 to 30 feet in diameter.

Plans and specifications for conversion from oil to gas were prepared by Natural Gas and the burner unit specified thereon was furnished by Anthony. The drier is a rotating brick-lined kiln 22 feet long with an inside diameter of about 5 feet into which the flame is blown from the separately installed burner. Schematic diagram and manufacturer's description of the burner is contained in Anthony's Data Sheet admitted in evidence herein. It may be noted that the burner actually installed appears to have been not exactly the same as that shown on the exhibit but design and operating principles insofar as gas is concerned were the same. There was testimony that natural gas under three to five pounds pressure and air under one to three pounds pressure were separately introduced into a mixing chamber and forced out of the orifice of the air adjusting cap, ignited by a pilot light and the flame then blown into the rotating kiln. The air cap was 12 inches in diameter and threaded to screw onto the burner head. The threads were coarse and free-running to permit easy adjustment of the space between the gas nozzle and the cap's face, thus increasing or decreasing the air space in the mixing chamber. No lock or set screws were provided for the cap except when specified by the purchaser. A vice-president of Anthony testified that the unit was manufactured to provide a minimum of $\frac{1}{4}$-inch air space with the cap screwed tight but that the tolerance was variable and it was conceivable that the space could be reduced to $\frac{1}{8}$ inch; that because of the coarseness of threads it would take a great deal of force to further close the space by stripping the threads; that the gas nozzle and air deflector were also threaded and could be moved forward toward the air adjusting cap but that set screws fixed its position; that the $\frac{1}{4}$-inch minimum space would not provide a satisfactory operation but that it was the practice to assemble the unit for shipping with the air cap screwed tight because the space between cap and nozzle had to be adjusted to suit each particular job and that once adjusted for proper burning it should not be "monkeyed with"; that if the $\frac{1}{4}$-inch minimum space was entirely closed it would be reasonable to assume that gas at the greater pressure could be forced back into the air line; and, also, that he did not know what actually caused the explosion.

There was also evidence that before installing the burner

Natural Gas adjusted the air cap and tested the flame; that this was the only adjustment made by them; that after installation, their representative was present when the flame was tested but not when it was put into operation for production; that neither plaintiff nor the plant foreman nor anyone else to their knowledge made any adjustments of the air cap or any other element of the burner; that the combustion chamber came factory packed and had not been changed; that experimentation for heat capacity was limited to changing quantities of sand and gravel introduced into the kiln. While the plant foreman said he welded one joint on the main line and had completely relaid the pilot line to the boiler, it appears that these were routine operations and had nothing to do with the burner itself. The entire installation was inspected by an official of either the county or state before commencing its use for production. Plaintiff also testified that though Natural Gas was to have had a man there during the first three days of production to show him how to operate it, this was not done. The several adjustments were never described to him and he received only operating instructions from the plant foreman but had had some five years' practical experience with both oil and gas burners. By deposition partially read into evidence, it appears that after the explosion Natural Gas made an examination of the installation to determine the circumstances existing and that it found nothing wrong. There was also evidence that neither the burner or its cap was subjected to any accidental or unusual force during installation or thereafter but after the explosion the air cap was closed so tightly it had to be hammered off.

The issues raised are (a) whether or not the evidence was sufficient to support a finding of negligence against either or both defendants under res ipsa loquitur; (b) whether the evidence without the application of *res ipsa* would support a finding of negligence because of unsafe or defective design or by reason of failure to instruct or caution appellant or his employer in the safety factors involved in the operation of the burner and its various adjustments; and (c) whether or not it was prejudicial error to exclude expert testimony on the question of accepted engineering standards of design and safety requirements in the San Francisco Bay area. These issues will be discussed in the order stated.

The adversaries have correctly cited the principles of law governing the granting of nonsuit and appellate review there-

of, wherein all reasonable intendments must be indulged in favor of reversing rather than affirming the trial court. (*Turner* v. *Ralph M. Parsons Co.* (1953), 117 Cal.App.2d 109 [254 P.2d 970]; *Raber* v. *Tumin* (1951), 36 Cal.2d 654 [226 P.2d 574].) The judgment can be supported only if giving plaintiff's evidence full prima facie value and indulging in every reasonable inference that can be drawn therefrom and with all conflicts resolved in plaintiff's favor, the result is a determination that there is no substantial evidence to support a judgment for the plaintiff. Neither the appellate court nor the lower court may weigh the evidence or consider the credibility of the witnesses. (*Lasry* v. *Lederman*, 147 Cal.App.2d 480 [305 P.2d 663].) The plaintiff here may rely on that portion of testimony given under Code of Civil Procedure, section 2055, which is favorable to him and disregard the unfavorable portions. (*Anthony* v. *Hobbie* (1945), 25 Cal.2d 814 [155 P.2d 826].) However, the evidence produced by plaintiff must support a logical inference in his favor, sufficient to raise more than a mere conjecture or surmise that a fact is as alleged in order to warrant submission of the question to a jury (*Alves* v. *Lopez*, 159 Cal.App.2d 705 [324 P.2d 652]), and a court should not put itself in the incongruous position of destroying logic to hold a case in court. (*MacDonald* v. *Jackson* (1953), 117 Cal.App.2d 598 [256 P.2d 591].) It is in the light of these principles that the evidence must be reviewed.

 Was res ipsa loquitur applicable? In our opinion there was prima facie proof sufficient to require submission of the question to the jury. The doctrine has three factual conditions (1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff. (*Ybarra* v. *Spangard* (1944), 25 Cal.2d 486 [154 P.2d 687, 162 A.L.R. 1258]; *Baker* v. *B. F. Goodrich Co.* (1953), 115 Cal.App.2d 221 [252 P.2d 24].)

 It is well settled that the first condition is satisfied if there is a basis of experience, either common to the community or brought out in evidence, from which it may reasonably be concluded that the accident is of a kind which does not ordinarily occur unless someone has been negligent. (*Hercules etc. Co.* v. *Automatic etc. Corp.* (1957), 151 Cal. App.2d 387 [311 P.2d 907]; *Zentz* v. *Coca Cola Bottling Co.*,

39 Cal.2d 436 [247 P.2d 344] ; *Hinds* v. *Wheadon,* 19 Cal.2d
458 [121 P.2d 724].) The more recent cases stress the point
that this condition requires that a balance of probabilities
points to the defendant's negligence. Respondent Anthony
evidently urging that the probabilities here did not point to
defendant's negligence, cites *Lockhart* v. *Martin,* 159 Cal.
App.2d 760 [324 P.2d 340]. There plaintiff was injured by
the sudden lurch of a fishing boat, and the opinion indicates
that on the basis of common experience, it was equally as
probable that the injury was caused by the impact of a large
wave as by any negligent handling of the boat. Here, as there
was evidence that the burner operated on principles entirely
similar to burners on ordinary gas ranges experience would
lead one to believe the explosion would not have occurred
but for negligence. In view of the testimony as to inspection
and manner of the operation up to the accident that, if be-
lieved, would exclude negligence on the part of plaintiff or
his employer, the probabilities point to the manufacturer or
installer as does other evidence discussed below in relation
to the other issues. There is also direct evidence in the form
of testimony under Code of Civil Procedure, section 2055,
from an officer of respondent Anthony Company to the effect
that the burner could not have exploded without negligence.
Testimony of witnesses may be used to establish that the
accident is of a nature which does not ordinarily occur
without negligence. (*Seneris* v. *Haas,* 45 Cal.2d 811 [291
P.2d 915, 53 A.L.R.2d 124] ; *Zentz* v. *Coca Cola Bottling Co.,*
*supra.*) The first condition at least was satisfied to the extent of
presenting a question to be resolved by the finder of the facts.

　　　　In order to satisfy the second condition of the
doctrine, it is not necessary to show that a defendant had
control of the instrumentality at the time of the accident
where the evidence shows that, after a defendant relinquished
control, the instrumentality had not been changed and that
it had not been mishandled. (*Burr* v. *Sherwin Williams Co.*
(1954), 42 Cal.2d 682 [268 P.2d 1041] ; *Ybarra* v. *Spangard,*
*supra.*) The respondents cite *Trust* v. *Arden Farms Co.*
(1958), 50 Cal.2d 217 [324 P.2d 583] on the duty which the
plaintiff has to establish that there has been no change in
the condition of the instrumentality. Respondents argue
that there the court in finding this condition not satisfied
relied on the fact that the plaintiff did not have her children
testify as to access to or handling of a milk bottle that had
been in the refrigerator for four days. Respondents empha-

size this point and draw a parallel to the fact that there were several workmen around the burner who were not called by plaintiff. However, the cited case did not turn solely on that factor. In view of evidence that the bottle had been removed at least once by one of the children, the failure to call the children was of added importance. Further, the husband did not negate change or mishandling of the bottle and there was a complete hiatus of evidence in this regard. In the record before us, there is evidence that Natural Gas made an adjustment of the burner's air cap to test the flame before installation. Standing alone, this factor could possibly excuse Anthony, but there is also evidence that this adjustment was both expected and required by Anthony. Further, the position of the air cap after the explosion (screwed tight) was the same as when shipped. There is also evidence that no one at the plant touched or adjusted the air cap nor had it been hit or damaged at any time during installation or operation. Both plaintiff and his foreman stated that the burner was in the same condition as when received. It may be noted that in view of prevailing conditions of industrial employment an inference also arises from the nature of the operation described that with only five other employees, it is unlikely that other employees departed from tasks required by their job assignments to volunteer services in the firing department. It is settled that a plaintiff does not have to eliminate every possibility of damage or change to the instrumentality after a defendant relinquishes control. (*Zentz* v. *Coca Cola Bottling Co., supra; Hercules etc. Co.* v. *Automatic etc. Corp., supra; Seneris* v. *Haas, supra.*) The condition is satisfied if there is evidence, conflicting or otherwise, that supports a reasonable inference that the instrument was not mishandled or changed in condition. (*Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453 [150 P.2d 436] ; *Baker* v. *B. F. Goodrich Co., supra.*) It may be conceded that the evidence as to handling by Natural Gas and others after the element left the control of Anthony Company, especially insofar as it was but one element of a fairly complicated installation, would support a finding that the condition had, in fact, been changed, thus leaving the second condition not satisfied. If such finding was made, res ipsa loquitur would not apply to Anthony. But in view of all of the circumstances and with evidence that the particular element was in factory packed condition, it is our opinion that it is the possibility of change in the com-

bustion chamber that determines the issue here. Granting that the question may be close, the evidence was sufficient to require a determination by the finder of facts whether the second condition of the doctrine existed.

Before leaving this second condition another argument of Natural Gas must be examined. *Tobola* v. *Wholey* (1946), 75 Cal.App.2d 351 [170 P.2d 952] is cited for the proposition that where testimony involves a physical impossibility it must be ignored. It is their theory that the condition of the air cap must have changed since they argue the burner could not have operated for three weeks with the air cap in the tight position. The appellant points out that all of the cases which have formulated the ''impossibility'' rule (except for *Lind* v. *Closs*, 88 Cal. 6 [25 P. 972], which was unusual in that it was a rape case) have done so indictum. Appellant claims the rule is that before evidence can be rejected as inherently impossible, the physical impossibility must be shown by evidence or must be apparent without resort to deductions. (*Brown* v. *Guy* (1959), 170 Cal.App.2d 256 [338 P.2d 586]; *Anderson* v. *Joseph* (1955), 136 Cal.App.2d 382 [288 P.2d 524]; *Kahn* v. *Lischner* (1954), 128 Cal.App.2d 480 [275 P.2d 539]; *Evje* v. *City Title Ins. Co.* (1953), 120 Cal. App.2d 488 [261 P.2d 279].) It must be noted that in all these cases credibility had been determined and evidence had been believed by the trier of fact below. Because of the nonsuit, that feature is here lacking. However, a compelling analogy exists because, as above noted, the plaintiff's evidence must be given all possible weight, and credibility is not in question. Respondent's theory does not accord with testimony of an officer of Anthony called under Code of Civil Procedure, section 2055 that if the cap were completely shut it would be ''a poor operation.'' He did not testify that the burner could not operate. In fact, with the cap shut there should have remained the $\frac{1}{4}$-inch opening for the passage of air. Further, the diagram and testimony shows that the nozzle itself could go forward, thus closing the critical space. In view of these factors, the respondent's theory is without merit both as to this point and when raised again in answering appellant's contentions on specific evidence on negligence.

The third condition for application of res ipsa loquitur may be satisfied even where a plaintiff has participated in the events leading up to the accident, if the evidence excludes his conduct as a responsible cause. (*Zentz* v. *Coca*

*Cola Bottling Co., supra; Hercules etc. Co.* v. *Automatic etc. Corp., supra*; *Baker* v. *B. F. Goodrich Co., supra.*) The same evidence which was analyzed in determining that the burner and the valve had not been changed or mishandled after respondents gave up control also tends to show that the appellant did nothing to the burner or valve which contributed to the accident. Respondent Anthony cites *Tucker* v. *Lombardo,* 47 Cal.2d 457 [303 P.2d 1041] sustaining a refusal of a *res ipsa* instruction because in the light of common experience it appeared equally as probable that the plaintiff, who was injured while skeet shooting, had been negligent in moving forward to reload the trap as it was that the accident resulted from negligence on the part of defendants. As far as that case bears on either the first or third condition, it is not in point because here we have an absence of such a probability, fortified by evidence tending to exclude conduct on appellant's part as a cause of the accident. They also cite *Simmons* v. *Rhodes & Jamieson, Ltd.* (1956), 46 Cal.2d 190 [293 P.2d 26], which is not in point since the plaintiff who was burned while mixing wet cement was shown to have added water to the mixture which created the heat, and caused the quick lime to be more readily absorbed by his clothing. There was nothing to negate evidence that it was his conduct that was responsible for the harm. Where, as here, the evidence is subject to different inferences, it is for the jury to determine the fact. (*Baker* v. *B. F. Goodrich Co., supra.*)

The analysis of the conditions which are required for the application of res ipsa loquitur indicates that evidence was present in the record which could have satisfied the doctrine. In considering the applicability of the doctrine, it is not for the trial court to draw the conclusion as to whether a defendant's negligence is or is not the more likely explanation of the accident. The question turns on whether the plaintiff has produced sufficient evidence to permit a jury to draw such inference and not whether the court itself would draw it. Where reasonable men may differ as to the balance of probabilities, the court must leave the question to the jury. (*Bauer* v. *Otis* (1955), 133 Cal.App.2d 439 [284 P.2d 133]; *Seneris* v. *Haas, supra; Hercules etc. Co.* v. *Automatic etc. Corp., supra.*) Where, as here, there is evidence that would support the application of res ipsa loquitur the granting of a nonsuit is erroneous. (*Raber* v. *Tumin, supra; Hinds* v. *Wheadon, supra; Towers*

v. *Massey-Harris Co.* (1956), 145 Cal.App.2d 210 [302 P.2d 77] ; *Mayers* v. *Litow* (1957), 154 Cal.App.2d 413 [316 P.2d 351] ; *McLaughlin* v. *Lasater* (1954), 129 Cal.App.2d 432 [277 P.2d 41].)　　　The jury, under appropriate instructions should have been permitted to determine whether the three factual conditions of res ipsa loquitur existed. (*Seneris* v. *Haas, supra; Baker* v. *B. F. Goodrich Co., supra.*)

　　　The next major issue is whether there was sufficient evidence on negligence, unaided by the doctrine of res ipsa loquitur, to allow the question to go to the jury. It is clear that proof of specific negligence does not preclude application of res ipsa loquitur, or vice versa. (*Towers* v. *Massey-Harris Co., supra; Fedler* v. *Hygelund* (1951), 106 Cal.App.2d 480 [235 P.2d 247].)

　　　The appellant points out, as to Anthony, that irrespective of privity of contract where an article is either inherently dangerous or reasonably certain to place life and limb in peril when negligently made, a manufacturer owes a duty of care to those who are the ultimate users. (*Kalash* v. *Los Angeles Ladder Co.* (1934), 1 Cal.2d 229 [34 P.2d 481] ; *Nebelung* v. *Norman* (1939), 14 Cal.2d 647 [96 P.2d 327] ; *Maecherlein* v. *Sealy Mattress Co.* (1956), 145 Cal. App.2d 275 [302 P.2d 331] ; *Larramendy* v. *Myres* (1954), 126 Cal.App.2d 636 [272 P.2d 824].) This duty requires reasonable care to be exercised in assembling component parts and inspecting and testing them before the product leaves the plant. (*Post* v. *Alameda Amusement Co.* (1953), 117 Cal.App.2d 588 [256 P.2d 580].)　　　Where an article is a dangerous instrumentality, the suppliers thereof (this would include both Anthony and Natural Gas as the term applies to both sellers and installers) have a duty to exercise care commensurate with the danger involved. The appellant correctly cites *Dow* v. *Holly Manufacturing Co.,* 49 Cal.2d 720 [321 P.2d 736] [gas heater] ; *Warner* v. *Santa Catalina Island Co.,* 44 Cal.2d 310 [282 P.2d 12] [shooting gallery] ; *Johnson* v. *Nicholson,* 159 Cal.App.2d 395 [324 P.2d 307] [gasoline] for this proposition. 2 Witkin's Summary of California Law (7th ed.), page 1414, section 220, also points out that this duty exists when the instrumentality involves a volatile gas, which has been held to be inherently dangerous.

　　　There is evidence of the existence of inherent danger in the testimony that if the cap were shut tight (the position it was found in after the accident), it could cause the gas to back up and mix with air. There is, therefore, evidence on

which the jury might have found the respondent Anthony Company breached its duty of care. The claim of no prior explosions from this type burner is inadmissible to prove due care. (*Edison* v. *Lewis Mfg. Co.*, 168 Cal.App.2d 429 [336 P.2d 286].) The jury should have been allowed to consider whether the design of the burner with an opening that could be closed narrowly enough to permit gas to back into air passages was a breach of care as to design.

 There was also evidence present which should have allowed the jury to consider the possible breach of the duty of care by Natural Gas in installation of the burner. The danger present when the air cap was closed has been indicated in the preceding discussion. Although Natural Gas in deposition indicated it adjusted the air cap in a preliminary test, there is evidence which is contradictory. The cap was closed when shipped by Anthony, and it was found in that position when examined after the accident. Further, a negative inference exists that the set screws to fix the position of the nozzle were not checked during installation. The plaintiff and his foreman were the only persons who operated the equipment and testified that neither they nor anyone else ever adjusted the cap or other parts of the burner head. The jury should have determined from the conflicting evidence whether there had been a duty to plaintiff which had been breached here.

It is with regard to this point that the respondent Natural Gas again raises the contention that it would have been physically impossible for the burner to operate with the air cap in the shut position. The same reasoning which disposed of this argument on the res ipsa loquitur argument, *supra*, compels a determination that the contention is without merit.

 There is another duty which must be considered. There was evidence discussed earlier to the effect that the shut position of the cap could force gas into the air passages and that this could cause an explosion. This was known to respondent Anthony Company and should have been known to respondent Natural Gas, whose business is to install such gas heaters. The plaintiff would be in the class of persons reasonably to be expected to be in the vicinity of the equipment while it was operated for the purpose for which it was supplied. There is testimony to the effect that no one told the appellant or foreman about the danger involved in operating the burner with air space closed. A jury could

reasonably infer that neither Natural Gas nor Anthony Company ever warned anyone connected with the operation of the dangers involved and that appellant was ignorant of them. There is also evidence to the effect that gas heat had not been used on this operation before, and although there is evidence to the effect that appellant had worked with gas heaters before, there is at least an inference that he was not familiar with the specific dangers presented by this burner, especially in view of the position of the air cap and the narrow tolerance for passage of gas on this burner as well as the possibility of forward movement of the nozzle. Under these circumstances, Restatement, Torts, section 388, places both respondents under a duty to warn of the hazards involved and failure to do so can be negligence. This principle has been followed by many California cases in similar situations. (*Gall* v. *Union Ice Co.*, 108 Cal.App.2d 303 [239 P.2d 48]; *Tingey* v. *E. F. Houghton & Co.*, 30 Cal.2d 97 [179 P.2d 807; *Larramendy* v. *Myres*, 126 Cal.App.2d 636 [272 P.2d 824].) It is clear that there was at least enough evidence for the jury to consider the existence of a duty to warn of the hazard and a breach thereof. It should be noted that the mere lapse of time between shipping by Anthony and installation by Natural Gas does not break the chain of causation. (*Darling* v. *Caterpillar Tractor Co.*, 171 Cal.App.2d 713 [341 P.2d 23]; *Hale* v. *Depaoli*, 33 Cal.2d 228 [201 P.2d 1, 13 A.L.R.2d 183].)

The record thus furnishes at least some support for an inference of actual negligence, the factors being known to both Anthony and Natural Gas. The test of foreseeability having been met, an inference as to proximate cause exists since no other causes were shown to intervene regarding Natural Gas and any evidence present as to Natural Gas' installation intervening as to Anthony presented a question of fact for determination by the jury. In view of the foregoing, there was sufficient evidence of actual negligence to require the jury to resolve the issue.

 Finally, appellant contends that the court erred in preventing him from eliciting expert testimony as to whether the burner's design met with the general engineering standards of safety in the area, and as to whether anything could have been done to make it safer in its operation. Proper foundation as to qualifications by way of general education and experience as well as knowledge of the particular operation was established. An objection to a question as to whether

the burner met with the general engineering standards in the area was sustained on the ground that it called for speculation. The expert testified that if, by reason of excessive vibration because of proximity to the rotating kiln, the air cap came down tight, it could create a dangerous situation, and that from an engineering standpoint, the aperture should have been designed to be kept open. This testimony was struck on the ground that the question had been leading and suggestive, and answered before respondent had a chance to object. He was not allowed to testify as to what could have been done to make the machine safer on the ground that such would be going "too far" with expert testimony. The appellant made an offer of proof to the effect that he was attempting to establish the standards of engineering in the area for such machinery. When the expert testified that he would have put in a set screw or welded the air cap so it could not move under vibration, the testimony was struck as being incompetent, immaterial and irrelevant.

While the admission or rejection of expert testimony lies largely within the discretion of the trial court, and its action will not be disturbed on appeal unless there is a showing of abuse of this discretion (*Davenport* v. *National Reserve Ins. Co.*, 91 Cal.App. 460 [267 P. 132]), the test is whether the case is one outside the common experience of men so that a person with superior knowledge because of training and experience is better able to reach a conclusion from the facts. (*Manney* v. *Housing Authority*, 79 Cal.App. 2d 453 [180 P.2d 69] ; *Wells Truckways, Ltd.* v. *Cebrian*, 122 Cal.App.2d 666 [265 P.2d 557].) It has been held that evidence is admissible to show the necessity and feasibility of adding a safety device to machinery and, also, whether machinery is properly equipped or adjusted. (*Young* v. *Bates Valve Bag Corp.*, 52 Cal.App.2d 86 [125 P.2d 840] ; *Mulholland* v. *Western Gas Constr. Co.*, 21 Cal.App. 44 [131 P. 110, 113] ; *Pitt* v. *Southern Pacific Co.*, 121 Cal.App. 228 [9 P.2d 273].) *Vedder* v. *Bireley*, 92 Cal.App. 52 [267 P. 724], held it was prejudicial error to exclude expert opinion as to whether brakes were in proper condition to function. In view of appellant's proffer and the holdings of the cases cited, as well as many others, the trial judge was not correct in his comment that expert evidence was not admissible and that the jury could form its own conclusions from the plans themselves.

Respondent Natural Gas defends the rulings and also the exclusion of testimony that the gas nozzle was so installed that vibration could make it move forward and close the air space. They rely on *Waller* v. *Southern Calif. Gas Co.,* 170 Cal.App.2d 747 [339 P.2d 577], for the proposition that an expert cannot express opinions on the basis of assumptions unsupported by the evidence. The statement of law is sound. However, here there was support in the evidence; the foreman testified to the vibration, the expert viewed the machine and was familiar with the vibration present; there are inferences that the position of the burner in close proximity to the rotating drier was known to both defendants; further, a report made after the equipment was dismantled showed that the burner tip had moved forward. The proffered evidence was admissible.

 The determinative question is whether the trial court abused its discretion in barring this line of expert testimony, for as pointed out earlier, and as noted by respondent, there can be no prejudicial error where the refusal is not an abuse of discretion. The question is answered by determining if the party barred from introducing such expert testimony has been denied a fair opportunity to prove his case. If so, the exclusion requires reversal. (*Jones* v. *Johnston Testers, Inc.,* 132 Cal.App.2d 162 [281 P.2d 602]; *Agnew* v. *City of Los Angeles,* 97 Cal.App.2d 557, 558 [218 P.2d 66].) Here, a foundation was laid, and the proffered testimony was within the proper scope of expert opinion. The evidence was both material and relevant, since it went to the issue of standard of care and breach as well as being relevant to causation. Under the circumstances of the case, the exclusion of the proffered expert testimony was prejudicial.

The judgment is reversed. The appeals from the order granting a motion for nonsuit, a nonappealable order, are dismissed.

Kaufman, P. J., and Draper, J., concurred.

A petition for a rehearing was denied October 20, 1960, and respondents' petitions for a hearing by the Supreme Court were denied November 16, 1960. Schauer, J., and McComb, J., were of the opinion that the petitions should be granted.