ISLAND SERVICE COMPANY, Inc., a corporation, Appellant,

v.

Joaquin A. PEREZ, Appellee.

No. 17908.

United States Court of Appeals Ninth Circuit.

Nov. 5, 1962.

---

Schofield, Hanson, Bridgett, Marcus & Jenkins, and Thomas M. Jenkins, San Francisco, Cal., E. R. Crain, Agana, Guam, for appellant.

Spiegel, Turner, Barrett & Ferenz, Walter S. Ferenz, Lyle H. Turner, and W. Scott Barrett, Agana, Guam and San Francisco, Cal., for appellee.

Before JERTBERG, MERRILL and BROWNING, Circuit Judges.

JERTBERG, Circuit Judge.

Before us is an appeal from a judgment of the district court adjudging that appellant take nothing by its counterclaim and decreeing that the counterclaim be dismissed with prejudice.

The judgment was entered pursuant to a motion made by appellee under Rule 41(b), Federal Rules of Civil Procedure, after appellant had completed the presentation of his evidence in the trial before the district court and following the entry by the district court of findings of fact and conclusions of law wherein the district court found the facts specially and stated separately its conclusions of law thereon and directed the entry of the judgment, as required by Rule 52(a), Federal Rules of Civil Procedure.

In order to understand why this appeal relates only to a counterclaim, it is necessary to review the prior history of this litigation.

On and prior to September 30, 1952, appellee was the owner of Lots Nos. 5143 and 5144. Prior to September 30, 1952,

appellee leased a portion of said lots to the firm of Corn & Murray and another portion of said lots to the firm of Koster & Wythe. On September 30, 1952, appellee and appellant entered into a written contract under the terms of which appellant was granted an exclusive license for a period of five years next ensuing the date of the agreement, to remove sand from that portion of said lots lying between the area leased by appellee to Corn & Murray and the area leased to Koster & Wythe, said area being approximately 150 feet wide and running from lot line to lot line. Thus the entirety of said lots was divided into three areas which were, from north to south, the land leased to Corn & Murray, the strip of land described in the written contract, and the area leased to Koster & Wythe. Under the terms of said written contract, appellant agreed to pay for the sand taken at $3.50 per load of three cubic yards. Appellant was required to keep a tally of the number of loads removed monthly, furnish such tally to appellee, and make payment not later than the 10th day of each month for all sand removed during the preceding month.

On October 31, 1955, appellee instituted an action against appellant to recover judgment for the agreed price of sand taken by appellant under the written contract. Appellant answered appellee's complaint and filed a "Cross-Complaint" against appellee on a common count of debt in the amount of $35,868.21, allegedly due from appellee. Following trial on May 21, 1956, judgment in favor of appellee was entered against appellant for $7,873.31. However, the district court ruled that the issue presented by the "Cross-Complaint" and answer thereto was not before the court. Appellant appealed to this Court from the judgment entered in favor of appellee. Appellant's appeal was dismissed because the judgment made no mention of the counterclaim and on the ground of failure to comply with the provisions of Rule 54(b), Federal Rules of Civil Procedure. See Island Service Company v. Perez, 255 F.2d 559 (9 Cir., 1957). Thereafter and on the 27th day of January, 1958, the district court entered an order directing the entry of the judgment in favor of appellee and certified that there was no just reason for delay in the entry of said judgment. The district court ordered that trial on the counterclaim be had at a future date. Again appellant appealed to this Court from the judgment in favor of appellee. On August 3, 1959, this Court dismissed such appeal on motion of appellee that the judgment appealed from did not comply with the requirements of Rule 54, Federal Rules of Civil Procedure.

Trial of the issue presented by the "Cross-Complaint" and answer thereto was had on November 22, 1961, resulting in the judgment now under review that appellant take nothing by its counterclaim and decreeing that the counterclaim be dismissed with prejudice.

The counterclaim is based on the written contract of September 30, 1952, and, in particular, paragraph 5 thereof which reads as follows:

"5. Perez hereby grants to Corporation an exclusive license for a period of five (5) years next ensuing the date of this agreement, to take sand from that portion of Lots No. 5143 and 5144, lying and situate in Tumon Bay, Municipality of Dededo, Territory of Guam, lying between the area presently leased by Perez to Corn & Murray and that presently leased by Perez to Koster & Wythe, being an area approximately one hundred fifty (150) feet wide and running from lot line to lot line. It is agreed that a sketch will be made of said area and attached hereto subsequently, marked 'Exhibit A,' and initialed by counsel for the parties for identification, the price of which sand shall be Three Dollars Fifty Cents ($3.50) per load of three (3) cubic yards. Corporation shall keep a tally of the number of loads removed and monthly give an account thereof, together with payment to Perez, no later than the 10th day of the following month."

Insofar as we can determine from the transcript of the evidence, it appears that appellant removed sand from appellee's land and disposed of the same primarily to Koster & Wythe until sometime in the late summer or early fall of 1955 for $7.00 per load of three cubic yards. The Corn & Murray lease was terminated on June 3, 1955. Sometime in August of 1955, appellee served upon appellant a written notice dated August 11, 1955, wherein appellee notified appellant that it was violating the provisions of paragraph 5 of the agreement by "removing sand from areas outside of and beyond that to which said corporation was given an exclusive license under said Paragraph 5 * * *" and notified appellant to cease and desist from so doing. It appears that the controversy was amicably settled and appellant continued to remove sand from appellee's land during the remaining term of the license. It also appears that sometime after the late summer or early fall of 1955, Koster & Wythe removed from appellee's land over an undisclosed period of time a large and undisclosed quantity of sand for which payment was made to appellee.

The theory underlying appellant's counterclaim is that appellee's sale of sand to Koster & Wythe was in violation of the exclusive license granted to appellant thus depriving appellant of the profit which it would have made if the sand had been purchasd from appellant by Koster & Wythe instead of from appellee. The counterclaim seeks to recover as damages the claimed loss of profits.

The pretrial order dated the 30th day of January, 1961, signed by the district judge, states:

"Defendant [appellant] herein contends that the parties entered into an agreement on the 30th day of September, 1952 wherein Plaintiff [appellee], for a valuable consideration, gave to Defendant [appellant] an exclusive license to remove sand from a certain area of Plaintiff's [appellee's] real estate for a period of five years; that Defendant [appellant], by reason of the terms of

paid [sic] license, was to pay to Plaintiff [appellee] a royalty of $1.50 per cubic yard for all sand removed from said area; that Defendant [appellant] lived up to the terms of the agreement and for a period of approximately three years removed and sold sand from the area and paid Plaintiff [appellee] the agreed royalty therefor; that thereafter, while said license was in full force and effect, Plaintiff [appellee], in violation of its express terms, gave to Koster and Wythe, contractors, permission to take sand from the area under license to Defendant [appellant], for a valuable consideration, which consideration should have belonged to Defendant [appellant] herein, less the $1.50 royalty due to Plaintiff [appellee]; that Defendant [appellant] alleges that Plaintiff [appellee] sold to the said Koster and Wythe sand to the value of Thirty Five Thousand Eight Hundred Sixty Eight Dollars and Twenty One Cents ($35,868.21).

"Defendant [appellant] requested permission to file an amended cross-complaint, but the Court held that the present complaint was satisfactory and could be amended to conform to proof after trial if that were found necessary.

"Plaintiff [appellee] denies that he sold any sand from the area licensed to Defendant [appellant] to any third party. Plaintiff [appellee] further denies by way of general denial any indebtedness to defendant [appellant]."

At the trial, appellant contended that the area of appellee's land described in the agreement was not the area which the parties intended to be subject to the exclusive license. In this connection appellant states:

"As appellant's exclusive area was described in the written agreement of September 30, 1952, the use of the Corn & Murray lease instrument and the written agreement of the parties resulted in obtaining a

different area from that intended by appellant and appellee as appellant's exclusive area, * * *."

Appellant explains this discrepancy by stating that it " * * * consists in the placement by the Corn & Murray lease instrument of the southern boundary of the Corn & Murray lease area (and hence the northern boundary of the 150-foot strip) farther to the south than this boundary was established by the parties on the ground."

Appellant called appellee as an adverse witness. Although many of the answers given by appellee were evasive and contradictory, and while his examination as an adverse party by appellant was unduly restricted contrary to the provisions of Rule 43(b), F.R.Civ.P., we summarize as follows: Appellee testified that appellant had removed sand from his land under the license continuously during the five-year term of the agreement except during settlement of the controversy which arose upon service of the notice upon appellant dated August 11, 1955 as above mentioned. He testified as to the removal of large quantities of sand by Koster & Wythe from appellee's land during the period of the license and receipt of the consideration therefor, but testified that the sand was taken by Koster & Wythe immediately north of the licensed area. He also testified that in his opinion the sand removed by appellant was taken from the 150-foot strip described in the agreement. Another witness called by appellant testified that he had supervised the removal of sand on behalf of appellant during the period of the license agreement; that he and appellee had established on the ground the area from which appellant was granted the exclusive right to remove sand during the period of the agreement; that all of the sand removed by appellant during the period of the agreement had been taken from such area; that there was no sand located in the strip described in the written agreement at the time the agreement was entered into or at any time thereafter; and that the area described in the written agreement was a rocky place barren of sand and from which appellant removed no sand during the life of the agreement.

Another witness called by appellant was a land surveyor who prepared plats of appellee's land. He testified in substance that if the area subject to the license were described in accordance with the information given to him on the ground by Mr. Corn as to the location of the southern boundary of the area leased to Corn & Murray, the northern boundary of the area under the license would be farther north than it would be if the southern boundary of the area leased to Corn & Murray were established in accordance with the description contained in the Corn & Murray lease.

On several occasions during the course of the trial, counsel suggested that the description of the licensed area contained in the written agreement was the result of a mutual mistake of the parties and that the counterclaim should be amended to express the true intent of the parties, and that amendment should be permitted to conform to the proof.

The district court found as a fact:

"That all sand taken by Koster & Wythe for which plaintiff [appellee] was paid was taken from the Corn & Murray area and none was taken from the 150-foot strip."

In respect to appellant's contention that the parties intended that the exclusive license granted to appellant was to attach to a different area than that described in the written agreement, the district court stated in its findings of fact:

"That at the trial, defendant [appellant] has apparently sought to show that the parties originally intended a 150-foot strip toward and at least partially within the Corn & Murray area. However, the defendant's [appellant's] own evidence as well as the testimony of plaintiff [appellee] was uncontroverted that on September 30, 1952, the date of the agreement upon which defendant [appellant] relies, the area to

the north of the 150-foot strip described in the agreement was under written lease to Corn, Murray and Mar for a period of approximately eight years. This leasehold interest is specially mentioned in paragraph 5 of the agreement. Under these facts, it is difficult to see how the parties could have intended to mean any other than the non-leasehold area between the Koster & Wythe area and the Corn & Murray area which area is clearly and easily located and apparently by defendant's [appellant's] own surveyor."

Included in the district court's findings of fact is the following:

"That for approximaetly the first three years of the five-year period in question, defendant [appellant] sold sand from the 150-foot strip in question as well as the Corn & Murray area to Koster & Wythe and others; that during this three-year period, plaintiff [appellee] sold no sand from said area; that sometime after the first three years, it not being established exactly when, Koster & Wythe removed a quantity of sand from the area identified as the Corn & Murray area and paid plaintiff [appellee] therefor. There is no evidence that Koster & Wythe or anyone else offered to buy sand from defendant [appellant] during this two-year period.

\* \* \* \* \* \*

"That at no time during the five-year period beginning September 30, 1952, was defendant [appellant] ever denied access to said 150-foot strip; that at no time did defendant [appellant] ever complain to plaintiff [appellee] about an interference with or deprival of any right or license for sand defendant [appellant] may have had arising out of said agreement."

Among its conclusions of law, the district court stated:

"While the law permits liberal amendment to conform to the proof,

there is no evidence that the parties intended any other area than the 150-foot strip lying between the two leaseholds existing on September 30, 1952. The fact defendant [appellant] may have removed sand from the Corn & Murray area is not, in and of itself, sufficient evidence that the parties intended something other than what the written agreement clearly states; particularly in view of the fact that (1) the property was previously leased on September 30, 1952, and (2) the plaintiff [appellee] served notice to cease encroachment on defendant [appellant] in August, 1955. There was no evidence that the parties amended the license at any later date. Consequently, there is no theory of law available to defendant [appellant], as developed by any facts, which would entitle him to any relief."

 We recognize that a district court is empowered to dismiss an action on the merits under Rule 41(b), Federal Rules of Civil Procedure, even though the evidence establishes a prima facie case that would have precluded a directed verdict for the defendant in a jury trial. Huber v. American President Lines, 240 F.2d 778 (2d Cir., 1957). A district court in a non-jury trial under such a motion may weigh and consider the evidence. See Barr v. Equitable Life Assur. Soc. of United States, 149 F.2d 634 (9th Cir., 1945), which was decided prior to the 1946 Amendment to Rule 41 (b). We realize that Rule 52(a), F.R. Civ.P., admonishes us that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Nevertheless, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U. S. Gypsum Co., 333 U.S. 364 at p. 395, 68 S.Ct. 525 at p. 542, 92 L.Ed. 746 (1948).

■ Our review of the entire record in this case leaves us with the firm conviction that the court's refusal to permit amendment of the counterclaim to conform to the proof and the making of certain material findings of fact resulted from the district court's misconception of the law relating to the interpretation of paragraph 5 of the agreement.

Under paragraph 5 of the agreement, appellee granted to appellant "an exclusive license for a period of five (5) years next ensuing the date of this agreement, to take sand" from the area described. Throughout the trial it was the view of the trial court that if appellant was able to remove sand from appellee's land during the period of the agreement to the extent of fufilling its need for sand, appellee's sale of sand to others from the area to which the exclusive license attached would not constitute a violation of the agreement. The district court's interpretation was apparently predicated upon his view that under such circumstances appellant would not have suffered damage. Illustrative of the court's view are the following colloquies between the court and appellant's counsel:

"THE COURT: Well, Mr. Crain, what this license gives Island Service is the right to take sand as they needed it. Now if Island Service Company took sand as they needed it over the period of the license, where is there any complaint?

"MR. CRAIN: They had the exclusive right to take and sell the sand from this area and if we can prove that during the period of the license that Mr. Perez permitted Koster & Wythe to take sand from this area, the proceeds from that sand should have gone to Island Service Company and not to Mr. Perez. It is as simple as that. The Court will please note upon the first—

"THE COURT: I won't accept that view of the agreement.

"MR. CRAIN: Does the Court feel that the exclusive license means other people can take sand from the area?

"THE COURT: I think the exclusive license has to be considered in the light of the—If sand was taken by someone else which the licensee needed for himself, then I think that there would be a problem. But you have the item of damage here.

"MR. CRAIN: That's right.

"THE COURT: How has the Island Service Company been damaged unless it can show that sand was taken by someone else that Island Service Company needed.

\* \* \* \* \*

"MR. CRAIN: Is the Court saying that it feels that even if Koster & Wythe, with Mr. Perez' permission and contracting with Mr. Perez, removes sand from the licensed area during the period of the license, that it wouldn't make any difference if Island Service Company doesn't have an immediate need for the sand?

"THE COURT: This is the right to take sand and the evidence to date indicates that outside of one dispute as to a boundary line, that at no time was the Island Service Company interfered with in its right to take as much sand as it wished."

In granting appellee's motion to dismiss the counterclaim following appellant's presentation of its evidence, the presiding judge, among other remarks, stated:

"Thereafter, and we have a situation here where the president of Island Service is thoroughly familiar with the area and has testified that he went upon the area; that he took, over a period of five years, all the sand that he needed; that at no time was he denied access to the area, no time was he denied the right to take as much sand as he wanted during the period of five years. \* \* But these agreements need be construed in accordance with the intent

of the parties and the intent of the parties is best demonstrated by their actions. Mr. Hines has testified that at no time did he have any difficulty getting everything that the agreement called for. He said he may have had some difficulty because Koster & Wythe were there, but what that difficulty is we don't know. Whether it meant additional work or what is involved there, we have no idea. The important thing is that he got everything that he bargained for in the agreement and that was the right to go in this area for a period of five years and take sand as he wanted it.

\* \* \* \* \* \*

"The Court has been unable throughout this trial today to understand what the cross complaint is trying to prove and the Court is completely unable to find that there is, that he suffered any damage here. There is loose talk about Mr. Perez taking advantage of Koster & Wythe and Corn & Murray and this cross complainant. We have no evidence that Koster & Wythe had difficulty with their lease. We have no evidence whatever that Mr. Hines [President of appellant] could not get all the sand that he wanted to take out of there as long as he paid the royalty provided in the contract. Then expect the Court to guess that what was contemplated was a completely different area than the description in the agreement.

"We talked for a moment about estoppel. It is a basic principle of law that if a person is being damaged, that he is under a certain obligation to complain at the time the damage occurs; he has to put the parties on notice that he thinks they are damaging his property or his interest. Mr. Hines made it perfectly clear he didn't think he was being damaged in any way, he was getting all the sand that he wanted, he knew that Koster & Wythe were taking sand, except maybe it amounted to a third of the entire area involved, which still left another third from which he could have taken sand if that is what he wanted.

"So the counsel for the original plaintiff will prepare the necessary findings of fact and conclusions of law.

"I am just going to point out one thing. Since there has been a suggestion here that if the cross complaint could have been amended, we might have a different situation. The Court has been more than liberal in permitting all kinds of questionable evidence to be introduced here and certainly no amendment to conform to the proof could possibly change the ultimate fact that the Island Equipment Company suffered no damage."

The misconception of the district court as to the proper interpretation of the agreement is reflected in some of the findings of fact and conclusions of law above quoted.

Our conviction that a mistake has been made arises not only from the misconception entertained by the district judge but also from the status of the evidence.

It is undisputed that appellant removed sand from appellee's land under the agreement during the term thereof. Hence, there is conclusive evidence that there was an area on appellee's land to which the parties intended the exclusive license to attach whether correctly described in the agreement or not. It appears to us that such area was made definite and certain by the conduct of the parties in their operations under the agreement. We do not profess to know where such area was located on appellee's land. Clearly the parties never intended an area barren of sand. In this connection, it is to be recalled that the president of appellant testified that the area described in the agreement was rocky and barren of sand on the date of the agreement and throughout the term of the agreement. While we are aware that appellee expressed his opinion that

the sand removed by appellant was taken from the strip described in the agreement, nevertheless, from the whole record in this case, we are convinced that proper administration of justice compels the reversal of the judgment of dismissal of the counterclaim.

The judgment of the district court is reversed and the cause remanded to the district court with instructions to grant appellant a new trial and with leave to appellant to file an amended counterclaim within a reasonable time to be fixed by the district court if appellant be so advised.