331 F.2d 1
 SOUTHERN ARIZONA YORK REFRIGERATION COMPANY, a corporation,
and Arizona York Refrigeration Company, a
corporation, Appellants,
v.
The BUSH MANUFACTURING COMPANY, a corporation, now known as
Bunham & Bush Manufacturing Company, a
corporation, Appellee.
 No. 18684.
 United States Court of Appeals Ninth Circuit.
 April 28, 1964.
 
 John W. Moran, Los Angeles, Cal., for appellants.
 Tremaine & Shenk, John Shenk, Los Angeles, Cal., for appellee.
 Before BARNES, JERTBERG and MERRILL, Circuit Judges.
 JERTBERG, Circuit Judge:
 
 
 1
 The appellants, Southern Arizona York Refrigeration Company, a corporation, and Arizona York Refrigeration Company, a corporation, were the plaintiffs in the District Court and the appellee, The Bush Manufacturing Company, a corporation, now known as Bunham & Bush Manufacturing Company, a corporation, was the defendant below.
 
 
 2
 In this opinion we will refer to the parties by their designations in the District Court.
 
 
 3
 The plaintiffs are corporations organized and existing under the laws of the State of Arizona. The defendant is a corporation organized and existing under the laws of the State of Connecticut and has a plant and business office in the County of Riverside, State of California, within the territorial area embraced by the United States District Court for the Southern District of California, Central Division.
 
 
 4
 The action instituted on March 15, 1961 by the plaintiffs against the defendant is one for indemnification for money paid by the plaintiffs to Swift and Company, an Illinois corporation, under an express warranty between plaintiffs and Swift and Company. Plaintiffs filed an amended complaint on May 23, 1961.
 
 
 5
 To provide the necessary background for the institution of the action, it is necessary to review prior history of the litigation in which the plaintiffs and Swift and Company were involved, and certain phases of which were considered by this Court in Authorized Supply Company of Arizona v. Swift & Company, 271 F.2d 242 (9th Cir. 1960) and Rehearing in 277 F.2d 710 (9th Cir. 1960). The material facts are not seriously in dispute, and the following summary has been taken from the admitted facts in the Pretrial Conference Order and Finding of Fact of the District Court.
 
 
 6
 On or about May 31, 1955, plaintiffs entered into a written contract with Swift and Company in the State of Arizona, to install certain refrigeration equipment in Swift and Company's building in Tucson, Arizona; that by the terms of the written contract plaintiffs were required to furnish and install, among other things, two refrigeration coils; that in order to perform the contract of installation, two refrigeration coils which had been manufactured, furnished and designed by the defendant were purchased by the plaintiffs from the Authorized Supply Company of Arizona, an Arizona corporation, the Arizona distributor for the defendant and were installed by the plaintiffs in Swift and Company's building; that on or about September 5, 1955 the refrigeration system was complete and installed by plaintiffs and the system worked satisfactorily thereafter for a period of time; that prior to the start-up and operation of the refrigeration system, said coils were tested by the plaintiffs and found to be satisfactory and without any leaks whatsoever; that thereafter a leak developed in the south coil which caused no damage; that the west coast representative of defendant instructed plaintiffs' maintenance engineer how to repair the same, which procedure was followed, and thereafter said coil operated satisfactorily for a period of time; that thereafter two more leaks appeared, one in the north coil and one in the south coil, both of which leaks were repaired in the same fashion as the first; that the cost of repairs of the three leaks were paid by the plaintiffs but they were reimbursed therefor by the defendant; that over the weekend of December 3rd and 4th, 1955, another leak developed in one of the coils permitting ammonia gas to escape into Swift and Company's storage area and as a result thereof meat and other things were damaged in the sum of $9,175.29; that on or about December 27-28, 1955 defendant, through its distributor in Arizona, the Authorized Supply Company, and at no cost to plaintiffs, replaced said coils with new Bush coils of an improved design; that said new coils were installed by plaintiffs in said plant and performed satisfactorily.
 
 
 7
 That on or about October 19, 1956, Swift and Company instituted action in the United States District Court for the District of Arizona against the plaintiffs and the defendant.
 
 
 8
 That at the time that plaintiffs were served as party-defendants in the Swift and Company action, plaintiffs called upon the defendant herein to take over the defense of the lawsuit and to pay any damage sustained by Swift and Company; that at that time and at all times thereafter, defendant refused to do so.
 
 
 9
 That on February 18, 1957, plaintiffs filed a third party lawsuit in the United States District Court for the District of Arizona, naming as defendants the defendant herein and the Authorized Supply Company; that thereafter said court found that it had no jurisdiction over the defendant herein by reason of the fact that it was not doing business in Arizona; that the law suit was dismissed as to the defendant herein on the above mentioned basis.
 
 
 10
 That thereafter plaintiffs herein were found liable to Swift and Company for the damage to the meat contained in the storage area on the basis of a breach of an express warranty, which liability was sustained by this court in 277 F.2d 710.
 
 
 11
 That the Authorized Supply Company was found not liable to the plaintiffs on the ground that plaintiffs had elected to rescind their contract for the sale of goods under the Arizona Sales Act, and having thus elected had chosen an exclusive remedy for damage limiting liability to replacement of the goods sold as against the Authorized Supply Company. See 271 F.2d 242.
 
 
 12
 That thereafter on July 29, 1960 plaintiffs paid in full said judgment of $9,175.29 and also paid in the course of the defense of said lawsuit and appeals relating thereto, attorney's fees and costs in the amount of $5,060.12.
 
 
 13
 The jurisdiction of the District Court was invoked upon the ground of diversity of citizenship under 28 U.S.C. 1332. No question is raised as to the jurisdiction of the District Court, or of this court, except defendant claims that the matter in controversy is less than the sum of $10,000.00.
 
 
 14
 At the trial of the action in the District Court, evidence was offered by plaintiffs in the form of testimony contained in depositions of Leland Gideon, Service Manager of Arizona York Refrigeration Company, one of the plaintiffs; Charles Sayers, Foreman in charge of installation of equipment for plaintiffs; Maurice D. Gerhart, an independent refrigerator serviceman; Allen Decker, Vice-President of defendant in charge of Engineering (under 43(b), Federal Rules of Civil Procedure); Oliver Butler, West Coast Representative of defendant at the time of the original installation (under the same section); and Dino Morelli, who was the only live witness called by the plaintiffs, a Professor of Engineering and who testified as an expert. In addition there was received in evidence itemized statements of the legal services rendered to the plaintiffs in the prior litigation, photographs of refrigeration equipment, catalogs issued by the defendant and installation instructions issued by the defendant.
 
 
 15
 At the conclusion of the plaintiffs' case, the District Court granted defendant's motion, made under Rule 41(b) Federal Rules of Civil Procedure, and ordered the action dismissed with prejudice.
 
 
 16
 On this appeal plaintiffs specify that the District Court erred:
 
 
 17
 'In granting the dismissal with prejudice at the conclusion of plaintiffs' evidence (1) on the basis of the fact that defendant, as a matter of law, was estopped to deny that the refrigeration coils, furnished by defendant, were defective when furnished; (2) under the doctrine of res ipsa loquitur, an inference of negligence was raised against defendant for having furnished the defective refrigeration coils, and (3) said inference was not overcome by defendant who offered no evidence by way of explanation of the defective coils, and (4) even without collateral estoppel under the doctrine of equitable indemnification, the factual situation presented by plaintiffs, was such that the doctrine of res ipsa loquitur placed the burden on defendant of at least offering evidence to overcome the inference of negligence raised by the stipulated facts and plaintiffs' evidence.'
 
 
 18
 The defendant states that the appeal presents the following questions:
 
 
 19
 1. Whether Appellants are entitled to equitable indemnity; and if so, under what theory?
 
 
 20
 (a) Collateral estoppel;
 
 
 21
 (b) Negligence; and if not proved,
 
 
 22
 2. Whether this case is one in which the doctrine of res ipsa loquitur applies in order to establish negligence?
 
 
 23
 3. Is the action barred by the Statute of Limitations?
 
 
 24
 4. Does the Court have jurisdiction of the matter?
 
 
 25
 Before considering the specifications of error on which plaintiffs rely, we shall first resolve the conflicting views presented by the parties as to the manner in which this Court should view the evidence which was before the District Court and upon which the judgment of dismissal of the action was entered, and dispose of the affirmative defenses raised by defendant which are set forth in questions 3 and 4 posed by it.
 
 
 26
 As above noted, after plaintiffs had completed the presentation of their evidence, the defendant moved under Rule 41(b), Federal Rules of Civil Procedure, for a dismissal with prejudice of plaintiffs' action. The District Court granted the motion and dismissed the action with prejudice.
 
 
 27
 Rule 41 entitled 'Dismissal of Actions' provides under subparagraph (a) for voluntary dismissal. Subparagraph (b) provides for involuntary dismissal. Subparagraph (b) in pertinent part provides:
 
 
 28
 'After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision * * *, operates as an adjudication upon the merits.'
 
 The plaintiffs state:
 
 29
 'Where a judgment is rendered upon a motion for a non suit (the equivalent of a dismissal under Section 41(b) of the Federal Rules of Civil Procedure), the Court must assume that all evidence received in favor of the plaintiff relevant to the issues, is true and all inferences and doubtful questions must be construed most favorable to plaintiff. Hinds v. Wheadon, 19 Cal.2d 458 at 460, 121 Pac. (2d) 724 at 725.'
 
 Defendant contends:
 
 30
 'After a motion to dismiss on a non-jury case, the court is not bound to review the evidence in the light most favorable to the plaintiff with all attendant favorable assumptions. Instead, the judge should take an unbiased view of all the evidence, direct and circumstantial, and accord it the weight he believes it entitled to receive.'
 
 
 31
 It is our view that the position taken by the defendant is correct. See Barr v. Equitable Life Assurance Society, 149 F.2d 634 (9th Cir. 1945). See also O'Brien v. Westinghouse Electric Corporation, 293 F.2d 1 (3rd Cir. 1961); Island Service Company v. Perez, 309 F.2d 799 (9th Cir. 1962), where this Court stated at page 803:
 
 
 32
 'We recognize that a district court is empowered to dismiss an action on the merits under Rule 41(b), Federal Rules of Civil Procedure, even though the evidence establishes a prima facie case that would have precluded a directed verdict for the defendant in a jury trial. Huber v. American President Lines, 240 F.2d 778 (2d Cir., 1957). A district court in a non-jury trial under such a motion may weigh and consider the evidence. See Barr v. Equitable Life Assur. Soc. of the United States, 149 F.2d 634 (9th Cir., 1945), which was decided prior to the 1946 Amendment to Rule 41(b).'
 
 
 33
 In its affirmative defenses the defendant contends that plaintiffs' action is barred by the Statute of Limitations and that the District Court lacked jurisdiction of the cause because the amount paid by the plaintiffs in satisfaction of the judgment obtained by Swift and Company was less than $10,000.
 
 
 34
 The record discloses that plaintiffs satisfied the judgment on July 29, 1960 and approximately eight months later and on March 15, 1961, filed the present action in the District Court. The Statute of Limitations in California upon a contract, obligation or liability not founded upon an instrument of writing is two years. In our view the obligation or liability of the defendant to the plaintiffs did not arise until the plaintiffs satisfied the judgment of the Swift and Company action.[1] Hence the instant action was timely filed, well within the applicable Statute of Limitations. There is nothing in the briefs of the parties to indicate that the result on this question would have been different if the action had been filed in the State of Arizona or the State of Connecticut.
 
 
 35
 Defendant's contention that the District Court lacked jurisdiction of the cause because in this diversity suit the judgment recovered by Swift and Company was less than the sum of $10,000.00 is without merit. Plaintiffs seek to recover not only the amount of judgment in the sum of $9,175.29, the amount paid in satisfaction of the Swift and Company judgment, but also attorney's fees and expenses paid out in defense of the law suit and appeals relating thereto in the amount of $5,060.12. We believe that an indemnitee is entitled to recover against the indemnitor the costs and expenses incurred in defending the suit, in instances where the indemnitor has knowledge of the legal proceedings against the indemnitee and refuses to defend. In the instant case plaintiffs' cause of action was within the jurisdiction of the District Court.
 
 
 36
 We are unable to agree with the plaintiffs' contention that the District Court erred as a matter of law in failing to hold that the judgment entered in favor of Swift and Company and against the plaintiffs is conclusive as against the defendant in this action under the doctrine of collateral estoppel.
 
 
 37
 In their second amended complaint plaintiffs seek to recover indemnification from the defendant for damages paid by the plaintiffs by reason of alleged negligent manufacture and/or design of certain refrigeration coils manufactured and designed by the defendant and furnished to plaintiffs, and installed in the Swift and Company building. In this respect it is alleged in the second amended complaint:
 
 
 38
 'That the refrigeration coils, as described aforesaid, were negligently, carelessly and defectively manufactured and/or designed by defendant, and that as a direct and proximate result thereof, subsequent to the installation of said coils, and on or about December 5, 1955, one of the coils developed a leak, which permitted ammonia gas to escape in Swift and Company's storage area, and as a direct and proximate result thereof, meat and other products were damaged * * *.'
 
 
 39
 Negligence in the manufacture and/or design of said coils was not an issue in the action which resulted in the judgment in favor of Swift and Company and against the plaintiffs. The action instituted by Swift and Company against the plaintiffs alleged negligence and breach of express and implied warranties and sought damages resulting therefrom. The negligence count was dropped on the trial and the cause proceeded solely on the theory of breach of warranty. The District Court concluded that under the contract between plaintiffs and Swift and Company, plaintiffs 'expressly warranted to Swift and Company that the refrigeration system was constructed of durable, sound materials and that said system was fit and suitable to safely and efficiently refrigerate and freeze meat products stored in said plant, and that the defects in the refrigeration coils which caused the escape of ammonia and gas constituted a breach of such warranties.' No finding of fact was made by the District Court that the refrigeration coils were negligently, carelessly or defectively manufactured and/or designed. Since negligence in the manufacture and/or design of the refrigeration coils was not in issue nor litigated in the action which resulted in the judgment in favor of Swift and Company and against the plaintiffs, the judgment in that action cannot operate to collaterally estop the defendant in the present action from denying that the refrigeration coils were negligently manufactured and/or designed.
 
 
 40
 Plaintiffs' final contention is that in the facts and circumstances of the case the District Court erred in failing to apply the res ipsa loquitur doctrine which, if applied, 'placed the burden on defendant of at least offering evidence to overcome the inference of negligence raised by the stipulated facts and plaintiffs' evidence.'
 
 
 41
 Defendant's primary answer to such contention is two fold. First, that under California law the three following conditions must be present before the doctrine is applicable:
 
 
 42
 1. The accident must be caused by an agency or instrumentality under the exclusive control of defendant;
 
 
 43
 2. The accident must be a type which ordinarily does not happen unless someone is negligent;
 
 
 44
 3. It must not have been due to any voluntary act or contributory fault of the plaintiff.
 
 
 45
 Defendant asserts that none of the three conditions is present in the instant case and hence the doctrine of res ipsa loquitur is not applicable.
 
 
 46
 And second, that 'in a negligence action against a producer or seller of industrial equipment and similar products, recovery will be denied if privity does not exist as between the injured person and the defendant, unless the jurisdiction is one in which the privity requirement has been repudiated in toto, or on which the requirement has been withdrawn with respect to a particular classification of cases which comprehend(s) such injury-causing product.'
 
 
 47
 We will first consider whether the three conditions above mentioned are present. The presence of such conditions is required by California law. Ybarra v. Spangard, 25 Cal.2d 486, 154 P.2d 687, 162 A.L.R. 1258 (1944).
 
 
 48
 The first condition is not literally fulfilled since the defendant was not in exclusive control of the refrigeration coils when ammonia gas escaped from one of the refrigeration coils and caused the damage to the meat products of Swift and Company. However, 'the fact that an accident occurs after the defendant relinquishes control of the instrumentality which causes the accident does not preclude application of the doctrine provided there is evidence that the instrumentality had not been improperly handled or its condition otherwise changed after control was relinquished by the defendant.' Burr v. Sherwin Williams Company, 42 Cal.2d 682, 268 P.2d 1041 (1954).
 
 
 49
 We believe that condition two is also present since it is common knowledge that the escape of ammonia gas from a refrigeration coil ordinarily does not happen if the coil is properly manufactured and properly installed. Following the original installation the coils were tested and found to be satisfactory and without any leaks. Leaks which thereafter developed were repaired by the plaintiffs in accordance with and under directions and procedures prescribed by the defendant. Plaintiffs were reimbursed by the defendant for the cost of repairs, which fact might reasonably be construed, in the posture of the case before the District Court, as an admission by defendant of some fault in the manufacture of the coils. In the circumstances defendant is in a superior position to explain the cause of the escaping ammonia gas.
 
 
 50
 We believe that condition three is also present, since there is no convincing evidence in the record that the escaping ammonia gas was due to any voluntary act or contributory fault of the plaintiffs except such acts of repair as were made by the plaintiffs in accordance with and under the instructions and directions of the defendant. It is not necessary that plaintiffs eliminate every remote possibility of damage to the refrigeration coils after they left defendant's control. All that is required is evidence permitting a reasonable inference that they were not subjected to harmful extraneous forces and had been carefully handled.
 
 
 51
 'The condition (condition 3) is satisfied if there is evidence, conflicting or otherwise, that supports a reasonable inference that the instrument was not mishandled or changed in condition.' Reynolds v. Natural Gas Equipment, Inc., 184 Cal.App.2d 724, 7 Cal.Rptr. 879 (1960). Petition for hearing before the Supreme Court of California denied.
 
 
 52
 In our view the evidence presented by plaintiffs is sufficient to raise the inference of negligence in the manufacture of the coils and place the burden on the defendant of offering evidence sufficient to at least rebut such inference unless the absence of privity between the plaintiffs and the defendant bars the application of the res ipsa loquitur doctrine.
 
 
 53
 The reviewing courts of the nation recognize exceptions and qualifications to the 'so-called' general rule that the manufacturer of a product is not liable for damages resulting from the use of such product in the absence of privity of contract between the party damaged and the manufacturer. One generally recognized exception is that the manufacturer of a product inherently dangerous to life and limb may be held liable on the ground of negligence, in an action for injury caused by the product notwithstanding there is no privity of contract between the manufacturer and the party injured. See Annotation 'Product Causing Injury-- Liability' 74 A.L.R.2d page 1142 et seq. and cases therein cited.
 
 
 54
 Plaintiffs do not contend that the refrigeration coils manufactured by the defendant were inherently dangerous to life or limb but contend that they became so when applied to their intended use in the usual and customary manner, and rely on another generally recognized exception to the 'so-called' general rule. This exception is generally referred to as the 'imminently' dangerous product exception to the requirement of privity. Under such exception a manufacturer of a product which, although not dangerous in itself to life or limb, becomes so when applied to its intended use in the usual and customary manner, is liable to a person who sustains injury as a proximate result of negligence in the manufacture of such product, which injury might have been reasonably anticipated. This exception is also applicable to products which are parts to be incorporated in the product of one other than the defendant manufacturer or seller if the parts are so negligently made as to render the products in which they are incorporated unreasonably dangerous for use. See Sheward v. Virtue, 20 Cal.2d 410, 126 P.2d 345 (1942); Larramendy v. Myres, 126 Cal.App.2d 636, 272 P.2d 824 (1954). See also The S. S. Samovar (D.C.Cal.1947) 72 F.Supp. 574; Edison v. Lewis Manufacturing Co., 168 Cal.App.2d 429, 336 P.2d 286 (1959); Witt Ice & Gas Co. v. Bedway, 72 Ariz. 152, 231 P.2d 952 (1951); Jump v. Ensign-Bickford Co., 117 Conn. 110, 167 A. 90 (1933).
 
 
 55
 It is our view that under the facts and circumstances shown by the record, the 'imminently' dangerous product exception to the requirement of privity is applicable to the present case, unless the fact that only injury to property occurred renders the exception inapplicable.
 
 
 56
 While counsel do not suggest that a 'choice of law' problem is involved in determining whether the exception to the requirement of privity in cases involving only damage to property is applicable, we believe that such a problem exists in this case since we must determine the existence and the extent of the right which plaintiffs seek to enforce. The question is one of substantive law which must be determined by the law of the place where the wrong was committed. The place of wrong is in the state where the last event necessary to make the defendant liable for an alleged tort takes place. Restatement, Conflicts of Laws, 377-390.
 
 
 57
 'In negligence actions against manufacturers and sellers of products which have caused injury, the courts have answered choice-of-law problems by ruling that the governing substantive law is the law of the place of the wrong, the lex loci delicti. 14'
 
 
 58
 Footnote 14 to which the text refers, reads as follows:
 
 
 59
 ('14 The Restatement of Conflict of Laws provides, in 378 thereof, that the law of the place of the wrong determines whether a person is liable for harm he has caused.') Annotation: Products Liability-- Conflict of Laws, 76 A.L.R.2d, p. 135.
 
 
 60
 Hence, in our view the substantive law of the State of Arizona governs the materiality of privity of contract in the instant case. No decision of the courts of Arizona has been called to our attention which had occasion to pass on the question presented. As above noted, the Supreme Court of Arizona applies the 'imminently' dangerous product exception to the requirement of privity in cases of injury to life or limb. Witt Ice & Gas Co. v. Bedway, supra.
 
 
 61
 We can see no reason why the 'imminently' dangerous product exception to the requirement of privity should be so limited as not to extend to injury to property. We believe that the weight of authority supports the view that the exception is as applicable to one as the other. Annotations: 74 A.L.R.2d 12, pp. 1164-1165, and cases therein cited.
 
 
 62
 In our view should the question under review be passed upon by the Supreme Court of Arizona, the holding of that court would be in accord with our view.
 
 
 63
 The judgment appealed from is reversed and the cause remanded to the District Court for further proceedings not inconsistent with the views herein expressed.
 
 
 
 [1]
 See De La Forrest v. Yandle, 171 Cal.App.2d 59, 62, 340 P.2d 52